IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADAM P. BECK, M.D., BETHANY CAREY, and ADAM P. BECK, M.D., P.C., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) Case No. 1:23-cv-10416-ADB |
| v. | )<br>) |
| MARK BRONSTEIN, M.D., ORANGE COAST EYE-CENTER, INC., MARK ALAN BRONSTEIN, M.D., A PROFESSIONAL CORPORATION, ROBERT BASS, O.D., OPTOMETRIC ASSOCIATES, P.C., AND MASSACHUSETTS SOCIETY OF OPTOMETRISTS, INC. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDNANTS MARK BRONSTEIN, M.D.'S; ORANGE COAST EYE-CENTER, INC.'S; MARK ALAN BRONSTEIN, M.D., P.C.'S; ROBERT BASS, O.D.'S; AND OPTOMETRIC ASSOCIATES, P.C.'S MEMORANDUM OF LAW IN <u>SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Defendants Mark Bronstein, M.D.; Orange Coast Eye-Center, Inc.; Mark Alan Bronstein, M.D., P.C.; Robert Bass, O.D.; and Optometric Associates, P.C. ("Defendants"), by and through their attorneys, for their memorandum of law in support of Federal Rule of Civil Procedure 12(b)(2) motion to dismiss the complaint of Plaintiffs Adam P. Beck, M.D.; Bethany Carey; and Adam P. Beck, M.D., P.C. ("the Plaintiffs' lack of personal jurisdiction state:

**INTRODUCTION**

This action continues a string of frivolous filings by Dr. Beck, an ophthalmologist, who is also apparently a licensed attorney in Massachusetts. Vision Service Plan Insurance Company ("VSP"), a health care service plan licensed under Chapter 2.2 of Division 2 of the California Health and Safety Code, terminated Dr. Beck as a member of its provider network of physicians

and optometrists that it manages ("Doctor Network") after learning that (1) the Commonwealth of Massachusetts placed several permanent restrictions on Dr. Beck's medical license, stemming from one of Dr. Beck's patients being left functionally blind as a result of Dr. Beck's treatment, and (2) Dr. Beck also had at least three medical malpractice cases filed against him. Dr. Beck failed to report either of these items to VSP as required under his Network Doctor Agreement ("NDA").

Dr. Beck initially contested this termination under VSP's Dispute Resolution Procedure. VSP's Credentialing Committee, an independent reviewer, and a peer review hearing panel, each found that Dr. Beck breached his NDA by concealing material facts and engaging in a "pattern of questionable care and decision making."

Despite the NDA calling for mandatory arbitration to review any adverse action, including termination, Dr. Beck first filed a prior suit in the Massachusetts Superior Court, Essex County (Case No. 2077CV00760) against VSP and Dr. Geoffrey Reynolds, the independent reviewer who lives in Hawaii. VSP removed that matter to this Court (Case No. 1:20-cv-12069-PBS), which (1) denied Dr. Beck's motion for temporary restraining order, finding "no likelihood of success" in claiming improper termination, and (2) ultimately dismissed claims against Dr. Reynolds for lack of personal jurisdiction and compelled Dr. Beck to arbitrate with VSP, as required under the NDA. *Id.*, *see* Arbitration Docket Entry No. 43, 65. Plaintiff then filed an arbitration demand against VSP with JAMS (Case No. 5130000006). VSP has pending a motion for partial summary disposition, in the arbitration, stemming from numerous immunities afforded for the work of medical peer review committees reviewing practitioner credentials for quality assurance.

Subsequent to the filing of the arbitration demand, Plaintiffs filed this frivolous lawsuit, again without proper jurisdiction in the Massachusetts state court, against other doctors

(Defendants Bronstein and Bass) who served on a Peer Review Hearing Panel ("Peer Review Panel") at VSP's request and pursuant to Dr. Beck's request for review of his termination. Plaintiffs largely assert the exact same claims raised against VSP and Dr. Reynolds arising out of Dr. Beck's membership termination. Defendants also removed the action to this Court, including demonstrating via affidavit that Plaintiffs had attempted to add a sham defendant (the Massachusetts Society of Optometrists, Inc.) in order to defeat complete diversity and try to affix venue in state court. *See* Defendants' Notice of Removal at Docket Entry No. 1.

Like Dr. Reynolds, Drs. Bronstein and Bass -- also members of VSP's Doctor Network -- and their affiliated companies, have no connection to Massachusetts. Dr. Bronstein is a citizen and resident of California. He is an independent contractor for Orange Coast Eye Center, Inc. which is a California corporation with its principal place of business in California. Mark Alan Bronstein, M.D., P.C., Dr. Bronstein's professional corporation, is a California professional corporation, with its principal place of business in California. Dr. Bass is a citizen and resident of Virginia. Optometric Associates, P.C., which Dr. Bass owned at all relevant times, is a Virginia professional corporation, with its principal place of business in Virginia. VSP's Peer Review Panel that Bronstein and Bass served on met remotely in the respective states of the panel member doctors, and the panel determination, affirming VSP's termination decision, was delivered to VSP in California. On this basis, Plaintiffs improperly seek to litigate against Drs. Bronstein and Bass in Massachusetts, while also naming their affiliated companies, despite these Defendants having no minimum contacts with the forum state. Defendants therefore asks the Court to dismiss this lawsuit for lack of personal jurisdiction.

## **FACTUAL BACKGROUND**

Upon learning of the Massachusetts consent order and Dr. Beck's numerous malpractice cases, VSP, in August of 2019, notified Plaintiff of its intent to terminate him in August 2019.

Complaint ("Compl.") ¶28. Dr. Beck contested this termination under VSP's Dispute Resolution Procedure. *Id.*, ¶29. Plaintiffs fail to outline in their Complaint the numerous steps of that procedure, but acknowledge that, at minimum, that the matter was reviewed by a VSP Peer Review Panel, which included Drs. Bronstein and Bass. *Id.*, ¶¶ 32, 38, 41, 42.

Dr. Bronstein is a citizen of California and is an independent contractor for Orange Coast Eye Center, Inc. which is a California corporation with its principal place of business in Fountain Valley, California. *See* Affidavit of Dr. Mark Bronstein at ¶1, attached as *Exhibit A*. He has a professional corporation, Mark Alan Bronstein, M.D., P.C., under which he practices, which is a California professional corporation, with its principal place of business in California. *Id.* at ¶2. Dr. Bass is a citizen and resident of Virginia. *See* Affidavit of Dr. Robert Bass at ¶1, attached as *Exhibit B*. Optometric Associates, P.C., which Dr. Bass owned at all relevant times, is a Virginia professional corporation, with its principal place of business in Virginia. *Id.* at ¶2.

Drs. Bronstein's and Bass' practices are within VSP's provider network, *see Exhibits A-B* ¶¶3, which includes an extensive group of approved providers of optometric care and services. In addition to serving as a Network Doctor, *id.*, both doctors (as independent contractors) also serve on peer review panels and other administrative support services for VSP in furtherance of the company's quality assurance program. *Id.* at ¶4.

In this case, Drs. Bronstein and Bass served on a Peer Review Panel to provide a neutral and independent review of VSP's decision to terminate Dr. Beck from VSP's network of approved service providers. *Exhibits A-B,* ¶¶5. This review occurred after VSP had made the initial determination to terminate Dr. Beck from its provider network, whereupon Dr. Beck challenged that decision. *Id.* The VSP Peer Review Panel met remotely, and Drs. Bronstein and Bass performed all panel work in their respective home states. *Id.*, ¶¶6. At no time in conjunction with the work performed for the VSP Peer Review Panel did Drs. Bronstein or Bass

travel to Massachusetts, nor did they meet, correspond, or speak with Dr. Beck outside of the peer review hearing. *Id.*, ¶¶7. Further, neither doctor treats any patients in Massachusetts. *Id.*, ¶¶9. At the conclusion of the peer review hearing, the VSP Peer Review Panel approved VSP's termination decision and the Panel Chair communicated its decision to VSP in California. *Id.*, ¶¶7.

## ARGUMENT

### A. Legal Standard

When decided on the briefs, a motion to dismiss for lack of personal jurisdiction is reviewed under a *prima facie* standard, by which the court is to determine "whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26, n. 2 (1st Cir. 2008) (internal quotation marks omitted) (noting that plaintiffs may have to meet the stricter "preponderance" or "likelihood" standards if an evidentiary hearing is held). To satisfy even the *prima facie* standard, a "'plaintiff ordinarily cannot rest upon the pleadings but is obligated to adduce evidence of specific facts.'" *Id.* (quoting *Foster-Miller, Inc. v. Babcock & Wilco Canada*, 46 F.3d 138, 145 (1st Cir. 1995). "[I]n rendering a decision on the issue of personal jurisdiction under the prima facie standard, this court is obliged to " 'take the facts from the pleadings and whatever supplemental filings[1] ... are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." *Duggan v. Martorello*, 596 F. Supp. 3d 158, 178 (D. Mass. 2022).

---

[1] In considering whether personal jurisdiction may be asserted over the defendants, the Court may consider affidavits and other factual material submitted by the parties. *See, e.g., Boit v. Gar-Tec Prod., Inc.,* 967 F.2d 671 (1st Cir. 1992). "A court may determine that in the circumstances of a particular case it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a *prima facie* showing of facts essential to *in personam* jurisdiction … for example, when the proffered evidence is conflicting and the record is rife with contradictions, *see General Contracting & Trading Co. v. Interpole, Inc.,* 899 F.2d 109, 115 (1st Cir.1990), or when a plaintiff's affidavits are "patently incredible," *see Landmark Bank v. Machera,* 736 F.Supp. 375, 380 n. 7 (D.Mass.1990)." *Id.* at 676.

**B. Defendants' Actions Do Not Fall Within the Reach of the Massachusetts Long-Arm Statue**

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" *Filmore v. VSP N. Am.*, No. 18-10256, 2019 U.S. Dist. LEXIS 6389, *13 (D. Mass. Jan. 14, 2019) (citing *Baskin-Robbins Franchising, LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016)), a true and correct copy of which is attached as *Exhibit C*.

Historically, the Massachusetts long-arm statute has been interpreted to be coincident with its greatest allowable Constitutional reach. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002). Traditionally, therefore, it was unnecessary to evaluate whether the long-arm statute would grant jurisdiction, because so long as exercising personal jurisdiction would not violate due process, Massachusetts' long-arm statute was interpreted to grant it. *Id.*

Recently, however, courts have reversed course and held that the Massachusetts long-arm statue "does not purport to extend jurisdiction as far as due process would allow." *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 207 (D. Mass.) (citing cases) (internal quotation marks omitted). Therefore, an additional step to determine the reach of the long-arm statute must be taken in any analysis regarding personal jurisdiction, as the reach of the long-arm statute and the concept of due process are no longer considered synonymous. This is reflective of the idea that even in situations in which due process is not offended, jurisdiction under the Massachusetts long-arm statute may nevertheless be improper. *See, e.g., Filmore*, 2019 U.S. Dist. LEXIS 6389, *14 ("A Massachusetts court may acquire personal jurisdiction when some basis for jurisdiction enumerated in the statute has been established.")

Massachusetts' long-arm statute identifies eight types of actions that may subject a party to the jurisdiction of the Commonwealth. G.L. c. 223A, § 3(a)-(h). Plaintiffs here only allege that all Defendants purportedly "have caused tortious injury by an act or omission within [Massachusetts]." Compl. ¶14; citing M.G.L. ch. 233A, §3(c). *However, Plaintiffs never allege what alleged tortious actions or conduct any Defendant purportedly took within the state of Massachusetts.* Rather, Drs. Bronstein and Bass, acting exclusively as neutrals, merely participated remotely in a peer review process in their home states of California and Virginia, respectively, at the request of a California company, VSP; thereafter delivering results of their review to VSP in California. *See Exhibits A-B*. None of these actions occurred in Massachusetts. *Id*. *See, e.g., Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) (state resident's suit against out of state defendants dismissed where claim did not arise out of, nor related to, defendants' contacts with state); *SCVNGR, Inc. v. Punchh, Inc.*, No. SUCV2016-00553-BLS1, 2018 Mass. Super LEXIS 459 (Mass. Sup. Ct. Sept. 17, 2018) (no jurisdiction over defendant where alleged offending statements not made within state)[2], a true and correct copy of which is attached at *Exhibit D*.

The hodge-podge of extraneous conspiratorial allegations that Plaintiffs do plead in attempting to link the Defendants somehow to Massachusetts do not assert tortious conduct within the state. *See Canning v. Gunstock Area Com.*, 695 F. Supp. 602 (D. Mass 1988) (complaint dismissed where plaintiff failed to establish how claimed in-state activities gave rise to injury). Regardless, the numerous allegations are false, and it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a prima facie showing of facts essential to in personam jurisdiction .For example, contrary to the Plaintiffs' allegation that Dr. Bronstein utilizes the

---

[2] The Defendant affiliated entities are not even alleged to have had any involvement in the Peer Review Panel.

Orange Coast Eye Center, Inc. website to somehow "lure in Massachusetts residents who live part of the year in California", *see* Compl., ¶¶48-53, Dr. Bronstein merely lists a fellowship, which occurred in Massachusetts, among a long list of education and training in his lengthy bio. *See* https://fountainvalley-eyedoctor.com/staff/mark-bronstein-md/.  He does not in any way target Massachusetts residents as part of his California practice.  *Exhibit A*, ¶10. Similarly, as previously argued in Defendants' Notice of Removal, *see* Docket Entry No. 1, none of the Defendants have any connection to the Massachusetts Society of Optometrists, Inc., contrary to Plaintiffs' specious allegations "upon reasonable information and belief." Compl., ¶¶63-73.

Further, refuting Plaintiffs' allegation that Defendants are "high level agents" and/or "board members" for VSP, *see* Compl. , ¶¶76-78, Drs. Bronstein and Bass were not board members at the time they served on the VSP Peer Review Panel, but rather merely participated as network providers in the dispute resolution process to which Dr. Beck had agreed when he became a VSP Network Doctor.  *See Exhibits A-B*, ¶¶8; *LaForest v. Ameriquest Mortg., Co.*, 383 F. Supp. 2d 278, 284 (D. Mass. 2005) (status as a low-level employee, acting within the scope of his employment precluded application of section 3(c)).  Moreover, their involvement in this situation was limited—they only became involved remotely *after* VSP's decision to terminate Dr. Beck had been made, whereupon they did nothing more than review records and offer a neutral opinion that the termination was justified.  *LaVallee v. Parrot-Ice Drink Products of America, Inc.*, 193 F. Supp. 2d 296, 301 (D. Mass. 2002) ("[F]or jurisdictional purposes, employees are 'not to be judged according to their employer's activities [but by whether they were] primary participants in the alleged wrongdoing' intentionally directed at the forum.") (alteration in original) (quoting *Calder v. Jones*, 465 U.S. 783 (1984)).

Consequently, Massachusetts' long-arm statute does not reach any of these Defendants, and they should be dismissed from this lawsuit for lack of personal jurisdiction.

### C. The Exercise of Personal Jurisdiction Over Defendants Violates Due Process

Independent of the reach of the Massachusetts long-arm statute, these Defendants should also be dismissed from this action because the exercise of personal jurisdiction over them would violate due process. "Though necessary, compliance with the long-arm statute is not sufficient in itself to render personal jurisdiction proper in this court. [Plaintiff] must still show that the exercise of jurisdiction pursuant to that statute comport with the structure of the Constitution." *TargetSmart*, 366 F. Supp. 3d at 209 (int. cit. omitted).

"[D]ue process requires that a defendant have 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *MHA Financial Corp. v. Varenko Investments Ltd.*, 583 F. Supp. 2d 173, 177 (D. Mass. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: (1) "general" jurisdiction; and (2) "specific" jurisdiction, the former requiring a level of "continuous and systemic activity" in the Commonwealth that is not alleged in Plaintiffs' complaint. *See Daynard*, 290 F.3d at 51.

Where, as here, there is no claim of general jurisdiction, due process requires that a defendant have sufficient contacts with the forum state to confer "specific jurisdiction." *TargetSmart*, 366 F. Supp. 3d at 209 (citing *Int'l Shoe* 326 U.S. at 316). The First Circuit has adopted a three-prong test to determine whether a court may exercise specific jurisdiction over a defendant. *Id.* at 177-78. In order for a court to exercise specific jurisdiction: (1) the minimum contacts supporting jurisdiction must be related to the lawsuit; (2) there must be some purposeful availment of the defendant to the forum; and (3) it must be reasonable to make the defendant answer in the forum state. *See, e.g.*, *Phillips*, 530 F.3d at 27. Failure to satisfy any of the three prongs is fatal to jurisdiction. *Id.*

### 1. & 2. Defendants Have No Minimum Contacts Related To The Lawsuit And Did Not Purposefully Avail Themselves of the Privileges and Protections of the Commonwealth of Massachusetts

To maintain their action against Defendants in this Court, Plaintiffs must demonstrate that the Defendants "purposefully availed [themselves] of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making [his] voluntary presence before the state's courts foreseeable." *Phillips*, 530 F. 3d at 28 (quoting *Daynard*, 290 F.3d at 61). Purposeful availment requires voluntary actions by the defendant *personally*—not actions "based on the unilateral actions of another party." *Id.* (quoting *Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007)).

Favorably construed, Plaintiffs' claims are that Drs. Bronstein and Bass (and thereafter attempting to attach to them affiliated extraneous companies with no connection to this matter) purposefully availed themselves of the benefits and protections of the Commonwealth when they served on the VSP Peer Review Panel as residents of foreign states, for a company headquartered in California, concerning a doctor (Dr. Beck) who lives in Massachusetts. Effectively, Plaintiffs' position is that the mere fact that they reside or are located in Massachusetts is sufficient to justify exercising personal jurisdiction. But the First Circuit has repeatedly rejected this theory. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995) (rejecting personal jurisdiction when "defendant['s] only connection with [the forum state] was the [plaintiffs'] residence there"); *Rodriquez v. Fullerton Tires Corp.*, 115 F.3d 81, 85 (1st Cir. 1997) (rejecting personal jurisdiction merely because manufacturer knew its product might be purchased in a given jurisdiction).

Furthermore, as stated above, the Defendants personally took no action related to Dr. Beck that occurred in Massachusetts. Rather, they remotely exercised functions of a VSP Peer Review Panel, while in foreign states, and then reported back to VSP in California. *See Exhibits*

*A-B*. To the extent the VSP Peer Review Panel's affirmation of termination impacted Plaintiffs in any way, it was only through VSP (by route of California). Such a tenuous and circuitous connection to Massachusetts is insufficient to justify exercising jurisdiction over Defendants. *See New Hampshire Ins. Guar. Ass'n v. Markem Corp.*, 424 Mass. 344, 348-49 (1997) (declining to exercise jurisdiction over foreign defendant that conducted business with entity it reasonably believed to be based outside of Massachusetts). As such, Defendants cannot be said to have agreed to the "*quid* for the *pro* that consists of the state's extending protection or other services to the nonresident." *Sawtelle*, 70 F.3d at 1392 (quoting *Coté v. Wadel*, 796 F.2d 981, 984 (7th Cir. 1986)). They should, therefore, be dismissed from further proceedings in this matter.

### 3. It is Unreasonable for the Courts of the Commonwealth of Massachusetts to Exercise Jurisdiction over Defendants

For Plaintiffs to maintain their suit against Defendants in this Court, they must also demonstrate that it is reasonable for this Court to exercise jurisdiction over these Defendants. *United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). In the First Circuit, reasonableness is judged by the so-called "Gestalt factors," which include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.* at 1088 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). These factors are considered on a "sliding scale," with the first two factors more important than the latter three. *Ticketmaster*, 26 F.3d at 210. These first, and overall majority of, factors, favor dismissal.

Concerning the first factor, Defendants are citizens of foreign states. Particularly where Dr. Bronstein, Orange Coast Eye-Center, Inc., and Mark Alan Bronstein, M.D., PC, located in

California, there would be a significant burden on Defendants' ability to physically appear before this Court, which should be given "substantial weight in calibrating the jurisdictional scales." *Ticketmaster*, 26 F.3d at 210 (finding no jurisdiction, in part, because burden of forcing California resident to appear in Massachusetts is "onerous"). Therefore, the first factor—the most important one, *see Art Technology Grp., Inc. v. Puritan's Pride, Inc.*, 716 F. Supp. 2d 93, 104 (D. Mass. 2010) (citing *Ticketmaster*, 26 F.3d at 210) — weighs heavily against exercising jurisdiction.

The second factor similarly cuts against jurisdiction. Since Plaintiffs live, work, and are located, in Massachusetts, it is reasonable to assume that Massachusetts has an interest in adjudicating this dispute involving its own citizens. *TargetSmart*, 366 F. Supp. 3d at 213. But the Commonwealth's interest in adjudicating disputes involving its citizens cannot "outweigh the fact that the … events of significance underlying the dispute took place" elsewhere. *Id.* Here, VSP, located in California, terminated Dr. Beck; Drs. Bronstein and Bass served on a VSP Peer Review Panel in California and Virginia; and the VSP Peer Review Panel forwarded their results to VSP in California. *See Exhibits A-B.* As such, Massachusetts' interest in protecting its citizens must be balanced against the fact that all of Defendants' actions occurred outside of Massachusetts, and that their actions were directed to their contacts at VSP, also outside Massachusetts. Under these circumstances, the second factor does not allow for jurisdiction over Defendants.

Finally, neither the fourth nor fifth *Gestalt* factors support the exercise of jurisdiction over Defendants. Plaintiffs' allegations do not present one of the unusual situations in which it is believed that the present Court is the *only* court in which Plaintiff's claims can be expected to be fairly adjudicated. *See, e.g.*, *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996) (fourth factor counseled in favor of exercising jurisdiction in Massachusetts' because

courts of other potential venue, Hong Kong, were not trustworthy in light of impending shift of Hong Kong from British to Chinese rule).  Nor is there any reason to believe that the courts of California or Virginia would be antagonistic to Plaintiffs should they choose to pursue claims against the respective Defendants in those state.  *Crowe v. Harvey Klinger, Inc.*, 277 F. Supp. 3d 182, 194 (D. Mass. 2017) (holding that the fifth factor is of no impact when states are expected to have an equal interest in the administration of justice).  As a result, because the balance of the *Gestalt* factors weigh in favor of not exercising personal jurisdiction over Defendants, it would be unreasonable to do so.  Defendants should therefore be dismissed from this lawsuit for lack of personal jurisdiction.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendants Mark Bronstein, M.D.; Orange Coast Eye-Center, Inc.; Mark Alan Bronstein, M.D., P.C.; Robert Bass, O.D.; and Optometric Associates, P.C., request the Court to dismiss the claims filed against them by Plaintiffs for lack of personal jurisdiction.

Respectfully submitted,

**MARK BRONSTEIN, M.D., ORANGE COAST EYE CENTER, INC., MARK ALAN BRONSTEIN, M.D., A PROFESSIONAL CORPORATION, ROBERT BASS, O.D., AND OPTOMETRIC ASSOCIATES, PC,**

By their attorneys,

*/s/ Daniel P. Dain*
Daniel P. Dain (BBO No. 632411)
Kate Moran Carter (BBO No. 663202)
Natasha K. Winter (BBO No. 695374)
DAIN, TORPY, LE RAY, WIEST & GARNER, P.C.
175 Federal Street, Suite 1500
Boston, MA, 02110
P: (617) 542-4800
F: (617) 542-4808
ddain@daintorpy.com
kcarter@daintorpy.com
nwinter@daintorpy.com

Dated: February 28, 2023

## CERTIFICATE OF SERVICE

On February 28, 2023, the undersigned attorney caused the foregoing Memorandum in Support of their Motion to Dismiss for Lack of Jurisdiction to be (i) filed electronically with the United States District Court for the District of Massachusetts, which was thereby served upon all parties registered to receive notice via the Court's CM/ECF system, and (ii) served by regular mail on all parties / counsel not registered with the Court's CM / ECF system.

*/s/ Daniel P. Dain*
Daniel P. Dain