UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ADAM P. BECK, M.D., BETHANY CAREY, and ADAM P. BECK, M.D., P.C., | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | |
| MARK BRONSTEIN, M.D., ORANGE COAST EYE-CENTER, INC., MARK ALAN BRONSTEIN, M.D., A PROFESSIONAL CORPORATION, ROBERT BASS, O.D., OPTOMETRIC ASSOCIATES, P.C., AND MASSACHUSETTS SOCIETY OF OPTOMETRISTS, INC., | * * * * * * * * | Civil Action No. 23-cv-10416-ADB |
| Defendants. | * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Adam P. Beck ("Dr. Beck"), his wife, Bethany Carey, and Adam P. Beck, M.D., P.C.

("Beck P.C.") (collectively, "Plaintiffs") filed this action raising various state common law tort

and statutory claims against Mark Bronstein ("Dr. Bronstein"), Mark Alan Bronstein, M.D., P.C.

("Bronstein P.C."), Orange Coast Eye-Center, Inc. ("OC"), Robert Bass ("Dr. Bass"),

Optometric Associates, P.C. ("OA") (collectively, "Out-of-State Defendants"), and the

Massachusetts Society of Optometrists ("MSO") (collectively, "Defendants") on December 18,

2022, in Massachusetts Superior Court. [ECF No. 1-1, Ex. A ("Verified Compl." or "Verified

Complaint")]. On February 21, 2023, the Out-of-State Defendants removed the case to federal

court, pursuant to the Court's diversity jurisdiction. [ECF No. 1 ("Notice of Removal")].

Presently before the Court are Plaintiffs' Motion to Remand, [ECF No. 6], and the Out-of-State

Defendants' Motion to Dismiss for lack of personal jurisdiction, [ECF No. 4].  For the reasons

set forth below, Plaintiffs' Motion to Remand, [ECF No. 6] is <u>DENIED</u>, and the Out-of-State

Defendants' Motion to Dismiss, [ECF No. 4], is <u>GRANTED</u>.

## I.     BACKGROUND

### A.      Factual Background[1]

1.     <u>The Parties</u>

- Plaintiffs are residents and citizens of Massachusetts.  [Verified Compl. ¶¶ 1–2].  Dr. Beck is an ophthalmologist licensed in the Commonwealth of Massachusetts and the owner of Beck P.C., an ophthalmology professional corporation with its principal place of business in Massachusetts.  [<u>Id.</u> ¶¶ 3, 20–21].

- Dr. Bronstein is an ophthalmologist, who lives and practices in California.  [ECF No. 5-1 (Bronstein Aff.) ¶ 1].  He owns Bronstein P.C. and is an independent contractor for OC, both of which are California corporations, with their principal places of business in California.  [<u>Id.</u> ¶¶ 1–2; ECF No. 1-1, Ex. C (Affidavit of Jared Younger, owner of OC) ¶ 1].

- Dr. Bass is an optometrist, living and practicing in Virginia.  [ECF No. 5-2 (Bass Aff.) ¶ 1].  He owned, at all relevant times, OA, which is a Virginia corporation with its principal place of business in Virginia.  [<u>Id.</u> ¶¶ 1, 2].

---

[1] Facts are drawn from the Verified Complaint, and, where relevant, the Notice, and the briefing on the Motions to Remand and Dismiss and attached affidavits and other exhibits.  <u>See Composite Co. v. Am. Int'l Grp., Inc.</u>, 988 F. Supp. 2d 61, 74 (D. Mass. 2013) ("summary judgment type evidence" may be considered in evaluating amount in controversy as relevant to a motion to remand) (quoting <u>Mut. Real Estate Holdings, LLC v. Houston Cas. Co.</u>, No. 10-cv-00236, 2010 WL 3608043, at *4 (D.N.H. 2010)); <u>Phillips v. Medtronic, Inc.</u>, 754 F. Supp. 2d 211, 215 (D. Mass. 2010) ("In considering whether a party has been fraudulently joined [in the context of a motion to remand], a court is not held captive by the allegations in the complaint. . . . A court may consider additional evidence beyond the claims made in the pleadings, including affidavits of the parties." (citing <u>Mills v. Allegiance Healthcare Corp.</u>, 178 F. Supp. 2d 1, 5 (D. Mass. 2001)); <u>Milford Power Ltd. P'ship by Milford Power Assocs. Inc. v. New England Power Co.</u>, 918 F. Supp. 471, 478 (D. Mass. 1996) ("Because a motion to dismiss for lack of personal jurisdiction seeks the same relief as a motion for summary judgment, the First Circuit Court of Appeals has found that 'the difference in name is unimportant. . . . [A]ffidavits presented are available on either motion." (quoting <u>Am. Express Int'l, Inc. v. Mendez-Capellan</u>, 889 F.2d 1175, 1178 (1st Cir. 1989)).

- Defendant MSO is a Massachusetts corporation. [Verified Compl. ¶ 11].

    2.    <u>Alleged Misconduct</u>

        i.    <u>VSP Termination and Review Process</u>

Dr. Beck entered into a Network Doctor Agreement with Vision Service Plan Insurance Company ("VSP"), a health care service plan in August 2016. [Verified Compl. ¶ 22]. Plaintiffs allege that in or around late July or early August 2019, Dr. Beck informed VSP about a disciplinary consent order he entered into with the Massachusetts Board of Registration in Medicine ("Massachusetts Consent Order") and that he was then terminated from VSP's network of providers. [Id. ¶¶ 24, 28]. The April 8, 2020 letter formally notifying Dr. Beck of his termination, prepared by Dr. Geoffrey Reynolds, made various findings, see [id. ¶¶ 33, 108–112, 117], including:

- Dr. Beck had "breach[ed] the Network Doctor Agreement by not maintaining [his] license in good standing";

- Dr. Beck had "concealed material facts regarding [his] licensure from VSP in failing to report that [his] medical license was in fact restricted by the Massachusetts State Board";

- "[S]everal significant malpractice suits [had been brought] related to [Dr. Beck's] practice of medicine," including "four (4) separate malpractice claims filed in 2017–2019 related to patient treatment from 2011 through 2017 involving the quality of care to [his] patients"; and

- Dr. Beck "ha[d] shown a pattern of questionable case and decision making as evidenced by the multiple malpractice claims against [him] by a variety of plaintiffs in the recent past."

[Verified Compl. ¶¶ 108–110, 113, 115]. Based on these findings, Dr. Reynolds concluded it was "reasonable to believe that VSP and its members could be at risk." [Id. ¶ 110]. Dr. Reynolds also noted that Dr. Beck's termination from VSP would "be reported to the National Practitioner Data [B]ank (NPDB) as required by law." [Id. ¶ 112]. Dr. Beck asserts that much of

3

the information in Dr. Reynolds' letter is false or irrelevant to the care he provided to VSP patients. [Id. ¶¶ 113–114].

A panel of physicians, comprised of Dr. Bass, Dr. Bronstein, and a third physician, subsequently reviewed Dr. Beck's termination ("Peer Review Panel" or "Panel"). [Verified Compl. ¶ 41]. Both Dr. Bass and Dr. Bronstein are Network Doctors in VSP's Doctor Network, and "serve on peer review panels and [provide] other administrative support services for VSP in furtherance of the company's quality assurance program." [ECF No. 5-2 (Bass Aff.) ¶¶ 3-4; ECF No. 5-1 (Bronstein Aff.) ¶¶ 3-4]. The Peer Review Panel held a hearing on June 17, 2021 ("Hearing"), [Verified Compl. ¶ 41], and ultimately upheld the decision to terminate Dr. Beck. [Id. ¶¶ 41, 126; ECF No. 23-2 (Beck Aff.) ¶ 58; ECF No. 5-1 (Bronstein Aff.) ¶ 7; ECF No. 5-2 (Bass. Aff.) ¶ 7]. The Panel's decision was communicated to VSP in a letter dated July 21, 2021 ("Peer Review Panel Letter"). [Verified Compl. ¶ 41]. As detailed in the Peer Review Panel Letter, the Panel found that VSP had learned of the Consent Order from an NPDB report, rather than from Dr. Beck, and that Dr. Beck had also failed to disclose the malpractice actions that had been brought against him. [Id. ¶ 126]. The Panel further found, on a separate issue, that Dr. Beck did not have a certification required to be a VSP Network Provider, [id.], and rejected Dr. Beck's argument that he was not obligated to disclose this information because it was not relevant to his treatment of VSP patients, [id.].

Plaintiffs allege that Dr. Bass and Dr. Bronstein are VSP board members, see, e.g., [ECF No. 7 at 12 (citing Verified Compl. ¶¶ 76, 78)], and that their participation in the Peer Review Panel violated VSP's guidelines that panel members be "independent physicians," that is, physicians who are not in competition with the "affected Provider," [Verified Compl. ¶¶ 42–43]. Plaintiffs further assert that the Peer Review Panel conducted a "cursory" review based on false

information, and ignored other information, and that various statements in the Peer Review Panel Letter are false and that OA, OC, and Bronstein P.C. are liable for this alleged misconduct through their alleged agents Dr. Bass and Dr. Bronstein.  [Id. ¶¶ 83, 85].

   ii.   Alleged Failure to Reimburse for Services Rendered

  In the context of their Chapter 93A, quantum meruit, and unjust enrichment and restitution claims, Plaintiffs allege that the Out-of-State Defendants, "through VSP[,] have repeatedly withheld or underpaid payments to Beck, P.C. in order to make a profit" and "refus[ed] to pay Beck, P. C. for services rendered."  [Verified Compl. ¶¶ 159, 164]; see [id. ¶ 177].  The Verified Complaint specifically alleges that the Out-of-State Defendants ("through VSP") "owe Beck and Beck, P.C. the total reasonable value of Beck and Beck, P.C.'s services" that have allegedly gone unreimbursed, "plus statutory interest."  [Id. ¶¶ 173, 175]; see [id. ¶¶ 159, 164].

   iii.   MSO's Alleged Involvement

  Plaintiffs separately allege that Dr. Bass and his company, OA, contracted with MSO, making Dr. Bass and OA agents of MSO, and that MSO is therefore liable for Dr. Bass and OA's alleged misconduct.  [Verified Compl. ¶¶ 10, 63, 73;[2] see also [ECF No. 7 at 11 (citing Verified Compl. ¶ 73)].  Plaintiffs also allege both that "MSO was in a position to benefit financially" from Dr. Beck's removal from VSP, because it "w[as] intricately twined with insurers such as VSP," and that it did in fact benefit financially from his removal.  [Verified Compl. ¶ 70; ECF No. 7 at 9 (citing ECF No. 6-1 (Beck Aff.) ¶ 11)].  Further, Plaintiffs allege that the Defendants, including MSO, "conspired to terminate Beck from his relationship with VSP," the Out-of-State

---

[2] There are several allegations that refer to Dr. Bass and OC as having a relationship with MSO. See [Verified Compl. ¶¶ 70–73].  The Court assumes these are typographical errors and that the intent was to reference OA.

Defendants "used MSO to coordinate their activities against Plaintiffs," and more generally that "Defendants," including MSO, were implicated in the conduct at issue.  See, e.g., [Verified Compl. ¶ 28 ("Beck was initially terminated by VSP through Defendants['] various actions on August 9, 2019."); id. ¶¶ 69, 171]; see also [ECF No. 6 at 2 ("[The other Defendants, along with [MSO,] . . . participated in a scheme to profit by driving Dr. Beck from the VSP network along with other optometric insurers.")].  Finally, in a reply (styled as a sur-reply), Plaintiffs make a number of assertions related to Dr. David Metsch, an MSO board member, including (1) that Dr. Metsch is a "direct competitor" of Dr. Beck; (2) that Dr. Metsch and "MSO have communicated with VSP with the direct intent to drive Dr. Beck from the VSP network"; and (3) that "MSO deliberately undertook a scheme, with Dr. David Metsch [as a board member], to communicate with VSP and attempt to 'narrow the eye doctor playing field.'"  [ECF No. 19 at 1–3 (quoting ECF No. 19-1 ¶¶ 2, 5)].

The Out-of-State Defendants dispute that they or the conduct at issue have any connection to MSO.

### 3.    Prior Actions Related to the Alleged Misconduct

Dr. Beck filed a prior action regarding his termination from VSP against VSP and Dr. Reynolds in Massachusetts Superior Court in August 2020,[3] which VSP removed to this Court.[4] On September 22, 2021, another session of this Court dismissed Dr. Beck's claims against Dr. Reynolds for lack of personal jurisdiction, granted VSP's motion to compel arbitration, and

---

[3] See Complaint, Beck, M.D., Adam P. vs. Reynolds, Geoffrey et al, No. 2077CV00760 (Mass. Sup. Ct. Aug. 3, 2020).

[4] See Beck v. Vision Serv. Plan Ins. Co., No. 20-cv-12069, ECF No. 1 (D. Mass. Nov. 19, 2020).

dismissed Dr. Beck's claims against VSP without prejudice to refiling after arbitration with VSP. See Beck v. Vision Serv. Plan Ins. Co., 600 F. Supp. 3d 145, 152 (D. Mass. 2021).

**B.      Procedural History**

Plaintiffs filed the instant action on December 18, 2022, [ECF No. 1], raising claims for: Negligence, Tortious Interference of Contractual Relations, Libel and Libel Per Se, Negligent Infliction of Emotional Distress, Negligence/Respondeat Superior/Agency, Restitution and Unjust Enrichment, Violation of Mass. Gen. Laws ch. 93A, Quantum Meruit, Restitution and Unjust Enrichment, Civil Conspiracy, Intentional Infliction of Emotional Distress, Tortious Interference with Prospective Economic Advantage, Loss of Consortium, and Intentional, Improper Interference with an Advantageous Business Relationship.  [Verified Compl. at 28–51].

After MSO answered in state superior court on February 13, 2023, see Answer, Beck, M.D., Adam P. et al vs. Bronstein, M.D., Mark et al, No. 2277CV01219 (Mass. Sup. Ct. Feb. 13, 2023), the Out-of-State Defendants filed their Notice of Removal and Motion to Dismiss with this Court on February 21, 2023 and February 28, 2023, respectively, [ECF Nos. 1, 4].  Plaintiffs filed the Motion to Remand on March 6, 2023, [ECF No. 6], which the Out-of-State Defendants opposed on March 17, 2023, [ECF No. 13], and opposed the Motion to Dismiss on May 1, 2023, [ECF Nos. 23, 24].

**II.      MOTION TO REMAND**

**A.      Legal Standard**

Assuming a Notice of Removal is timely filed, see 28 U.S.C. § 1446(b), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the

United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Federal courts are courts of limited jurisdiction[,] . . . possess[ing] only that power authorized by Constitution and statute." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994) (internal citations omitted). A defendant seeking removal bears the burden of showing that the federal court has jurisdiction. <u>See</u> <u>Danca v. Private Health Care Sys., Inc.</u>, 185 F.3d 1, 4 (1st Cir. 1999). If the Court lacks subject-matter jurisdiction over a removed action, the action must be remanded to state court. 28 U.S.C. § 1447(c).

**B.      Discussion**

The Out-of-State Defendants assert that removal is proper based on the Court's diversity jurisdiction over Plaintiffs' claims, because (1) the amount in controversy exceeds $75,000, and (2) although Defendant MSO is a Massachusetts corporation, there is nonetheless complete diversity, because Defendant MSO was fraudulently joined. [ECF No. 1 ¶¶ 9, 13, 20]. In their Motion to Remand, Plaintiffs refute both that the amount in controversy exceeds $75,000 and that MSO was fraudulently joined. [ECF No. 6 at 3–4]. Further, Plaintiffs contend that the Out-of-State Defendants did not timely remove the action to federal court after they received constructive notice of the lawsuit in December 2022. [<u>Id.</u> at 2–3].

1.      <u>Timeliness of Removal</u>

The plain language of 28 U.S.C. § 1446(b) states that:

> [t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b). Plaintiffs assert that the Out-of-State Defendants had "constructive notice" of the Verified Complaint in this action as of December 18, 2022, [ECF No. 6 at 3], when Dr.

Beck emailed a copy of the Verified Complaint to several attorneys, including Alexander Marks, [ECF No. 19 at 7], who was allegedly then counsel for VSP, [ECF No. 7 at 8], and later entered an appearance for the Out-of-State Defendants in this action. [ECF No. 19 at 7; ECF Nos. 17, 20]. Plaintiffs further argue that because the removal period commenced once there was constructive notice, the Notice of Removal, filed more than 30 days later, on February 21, 2023, was not timely. [ECF No. 6 at 3; ECF No. 19 at 6]. The Out-of-State Defendants respond that "constructive notice" does not exist under 28 U.S.C. § 1446(b)(1), and that the removal period commences only after formal service. [ECF No. 13 at 7]. As such, failing to remove within 30 days of December 18, 2022 does not constitute untimely removal. [Id.].

The Supreme Court has clarified that a "defendant's time to remove is triggered by" service of process, "not by mere receipt of the complaint unattended by any formal service." Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347–48 (1999); see also Evans v. New Prime, Inc., No. 13-cv-12834, 2014 WL 12796263, at *2 (D. Mass. May 22, 2014) ("The Supreme Court . . . rejected the notion that notice of the complaint prior to service triggers section 1446(b)'s removal period." (citing Murphy Bros., 526 U.S. at 354)). Thus, the Out-of-State Defendants were not required to file a notice of removal within 30 days of December 18, 2022, even assuming they had constructive notice on that date.[5]

---

[5] Although it is not clear whether Plaintiffs argue otherwise, the Court finds that the Out-of-State Defendants timely filed their Notice within 30 days of formal service, [ECF No. 19 at 7], a date determined by state law. See Crossetti v. Cargill, Inc., No. 18-cv-30002, 2018 WL 2770130, at *2 (D. Mass. June 8, 2018), aff'd, 924 F.3d 1 (1st Cir. 2019). In Massachusetts, plaintiffs may serve out-of-state defendants via certified mail, as was done here. See Mass. R. Civ. P. 4(e); see also LaPre v. Nat'l Tax Verification, Inc., No. 05-cv-40203, 2006 WL 8458666, at *3 (D. Mass. Sept. 18, 2006). Neither side explicitly asserts a date for when the Out-of-State Defendants were served. The "Proof of Service of Process" sections of the summonses indicate they were served on January 18, 2023, see, e.g., [ECF No. 1-1 at 3], but it appears from the envelopes attached to the Notice of Removal that, for at least some Defendants, the mailing was postmarked January

2.      Subject Matter Jurisdiction

Federal courts have diversity jurisdiction over cases arising between citizens of different states where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  Further,

> where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 . . . authorize[s] supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.

Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549 (2005).

i.      Amount in Controversy

Where, as here, a plaintiff has not alleged a specific amount in controversy in the complaint, claiming only that the amount in controversy is "likely to exceed $50,000.00," [Verified Compl. ¶ 19], the removing "defendant's 'amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court,'" Hildreth v. Camp Planner Int'l USA Corp., No. 19-cv-12355, 2019 WL 6911672, at *2 (D. Mass. Dec. 19, 2019) (quoting Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 87 (2014)).  "[I]f the plaintiff contests that allegation, . . . the court decides, by a preponderance of the evidence,

---

19, 2023.  See [ECF No. 1-1, Ex. A at 6, 9].  The Court therefore takes January 19, 2023 as the earliest possible date that service could have been completed for those Defendants.

Given that date, the end of the 30-day period for those Defendants, whether or not others were served earlier, fell on Saturday, February 18, 2023.  See BCCTC Assocs., Inc. v. Summerdale/AAHFI, L.P., 656 F. Supp. 2d 208, 213 (D. Mass. 2009) ("[D]uring his thirty days, the last-served defendant can exercise his right to file the notice, regardless of the prior inactivity of his codefendants.").  Pursuant to Massachusetts law, the relevant period "r[an] until the end of the next day which is not a Saturday, a Sunday, or a legal holiday."  Mass. R. Civ. P. 6; see also Masterpiece Kitchen & Bath, Inc. v. Gordon, 680 N.E.2d 1150, 1152 (Mass. 1997); Kish v. Vision Payment Sols., LLC, 958 N.E.2d 1181, 1 n.4 (Mass. App. Ct. 2011).  Because Monday, February 20, 2023 was a legal holiday, see Mass. Gen. Laws ch. 4 § 7, the Court finds that the period ran until February 21, 2023, the day that the Out-of-State Defendants filed their Notice of Removal.

whether the amount-in-controversy requirement has been satisfied.'" <u>Hildreth</u>, 2019 WL 6911672 at *2 (quoting <u>Dart Cherokee Basin Operating Co.</u>, 574 U.S. at 88).[6]  As the party seeking to invoke the court's jurisdiction, "[t]he defendants bear the burden of showing that th[e] amount-in-controversy requirement has been met." <u>Pazol</u>, 819 F.3d at 552.  "Defendants can satisfy their burden by . . . submitting 'summary judgment type evidence.'" <u>Composite Co.</u>, 988 F. Supp. 2d at 74 (quoting <u>Mut. Real Est. Holdings</u>, 2010 WL 3608043, at *4).

> The decision as to whether the defendants have met their burden "may well require analysis of what <u>both</u> parties have shown." . . . Thus, it is not enough for the plaintiffs to "[m]erely label[ ] the defendant's showing as 'speculative' without discrediting the facts upon which it rests." . . . But in evaluating what both parties have shown, [courts] may consider "which party has better access to the relevant information."

<u>Pazol</u>, 819 F.3d at 552 (quoting <u>Amoche</u>, 556 F.3d at 51).

In their Notice of Removal, the Out-of-State Defendants point to several instances in which Dr. Beck estimated his damages related to his termination and alleged underpayment from VSP to be more than $75,000.  [ECF No. 1 ¶ 20].  First, the Out-of-State Defendants cite to a $4,000,000 damages estimate included in an April 2020 letter that Dr. Beck sent to VSP, prior to bringing the 2020 litigation.  [<u>Id.</u> (citing ECF No. 1-1, Ex. G)].  This estimate was based on Dr. Beck's alleged loss of patients and reputational injury from his termination from VSP, both also at issue here.  <u>See</u> [ECF No. 1-1, Ex. G].  Second, the Out-of-State Defendants cite to an expert report that Dr. Beck submitted in arbitration with VSP, alleging that VSP underpaid him by

---

[6] The First Circuit has also described the defendant's burden as showing a "reasonable probability" that more than the statutory minimum is in dispute.  <u>See</u> <u>Pazol v. Tough Mudder Inc.</u>, 819 F.3d 548, 552 (1st Cir. 2016) (citing <u>Amoche v. Guar. Tr. Life Ins. Co.</u>, 556 F.3d 41, 50 (1st Cir. 2009)).  Although "[t]hat standard is 'for all practical purposes identical to' the preponderance of the evidence standard[,] . . . because questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the removing defendant's burden is better framed in terms of a 'reasonable probability,' not a preponderance of the evidence." <u>Id.</u> (quoting <u>Amoche</u>, 556 F.3d at 50).

$219,459.87.  [ECF No. 1 ¶ 20 (citing ECF No. 1-1, Ex. H)].  As noted above, Plaintiffs assert

that the Out-of-State Defendants are also liable for this alleged underpayment, and specifically,

for "the total reasonable value of Beck and Beck, P.C.'s services . . . plus statutory interest."

[Verified Compl. ¶¶ 159, 164, 173, 175].  Plaintiffs respond that these estimates do not show that

the amount in controversy in this action exceeds $75,000 because they include damages resulting

from Dr. Reynolds' and VSP's conduct, who are not parties to this action, and a quantum merit

claim for services rendered, which is not part of this case.  [ECF No. 7 at 7–8].  Additionally,

Plaintiffs point to an April 2022 demand that Dr. Beck made of VSP and others, including Dr.

Bass and Dr. Bronstein, for exactly $75,000.  [Id. at 7].

     Although the Court would generally credit the more recent-in-time demand from Dr.

Beck over his previous demand in 2020, his claim that the damages do not exceed $75,000 is

belied by statements he made in the April 2022 letter that "[t]he $75,000.00 figure is far less than

the award" he would seek through arbitration against VSP and was "just a fraction of the

underpayment and non payment for [his] services by [VSP], in addition to the conduct of their

termination."  [ECF No. 6-2 at 9].  Further, even assuming a substantial difference exists in the

damages associated with Dr. Beck's prior claims related to his termination against Dr. Reynolds

and VSP, and those associated with his present claims against the Out-of-State defendants

(which is not at all clear), Plaintiffs *have* raised a quantum meruit claim and other claims in this

action related to VSP's alleged underpayments to Dr. Beck, and have provided no explanation as

to why the amount in controversy for those claims is less than $219,459.87.  For present

purposes, what role, if any, the Out-of-State Defendants may have played in said underpayment

is largely irrelevant to the Court's jurisdiction because the pertinent jurisdictional question is the

amount in controversy, not how much the plaintiffs are ultimately likely to recover.  See

Amoche, 556 F.3d at 51.  The Court therefore finds that the Out-of-State Defendants have showed, by a preponderance of the evidence, that the amount in controversy for at least one claim exceeds $75,000.

ii.      Fraudulent Joinder

"A civil action otherwise removable solely on the basis of [diversity] jurisdiction under section 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  However, "plaintiff[s] may not impede a defendant's right of removal by fraudulently joining a non-diverse defendant who has no real connection to the case."  Surabian Realty Co. v. CUNA Mut. Grp., 245 F. Supp. 3d 297, 299 (D. Mass. 2017) (citing Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014); Mills, 178 F. Supp. 2d at 4).

A removing party asserting fraudulent joinder must show "'either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiffs can state a cause of action against the non-diverse defendant in state court.'"  Surabian, 245 F. Supp. 3d at 299 (quoting Mills, 178 F. Supp. 2d at 5).  To decide the question of fraudulent joinder, the court "may consider additional evidence beyond the claims made in the pleadings, including affidavits of the parties."  Phillips, 754 F. Supp. 2d at 215 (citing Mills, 178 F. Supp. 2d at 6); see also Badon v. RJR Nabisco Inc., 236 F.3d 282, 285 n.3 (5th Cir. 2000) (considering "undisputed summary judgment type evidence" when determining whether any reasonable possibility of recovery under state law existed).  The burden on the removing defendants is "heavy," inVentiv Health Consulting, Inc. v. Equitas Life Scis., 289 F. Supp. 3d 272, 281–82 (D. Mass. 2017) (citation omitted), and "any doubts in the evidence should

be construed in favor of remand," Swanson v. Lord & Taylor, LLC, No. 12-cv-10151, 2012 WL 3776450, at *2 (D. Mass. Aug. 28, 2012) (internal quotation marks and citation omitted).

The Out-of-State Defendants assert, based on Affidavits from each of the Out-of-State Defendants and Wayne E. Zahka, OD, MSO's Executive Director, that neither they, nor the conduct at issue, have any connection to or involvement with MSO, and that MSO was therefore fraudulently joined in this action.  [ECF No. 1 ¶ 17; ECF No. 1-1, Ex. B (Bronstein Aff.) ¶¶ 1–2; id., Ex. C (Younger Aff.) ¶ 1; id., Ex. D (Bass Aff.) ¶¶ 1–2; ECF No. 13-1 (Zahka Aff.) ¶ 7]. Plaintiffs respond that there is a reasonable possibility that they can state a cause of action against MSO, re-asserting the same allegations included in the Verified Complaint concerning MSO's involvement, with support from Affidavits from Dr. Beck.  [ECF No. 7 at 9].

First, Defendants argue that contrary to Plaintiffs' allegations, [Verified Compl. ¶¶ 10, 63, 71–73], because Dr. Bass and his corporation, OA, are not agents of MSO and in fact, have no relationship to MSO, MSO cannot be held liable for their conduct.  [ECF No. 1 ¶ 16–18; ECF No. 13 at 3–5].  Assuming that a contractual or advertising relationship between Dr. Bass/OA and MSO could establish agency,[7] as Plaintiffs allege, the Court finds that Plaintiffs have nevertheless failed to establish the existence of such a relationship.  The Verified Complaint and Dr. Beck's Affidavit, offered by Plaintiffs as support for this contention, are not based on personal knowledge, unlike the Affidavits of Dr. Bass and Dr. Zahka, which both attest that Dr.

---

[7] "An agent is simply someone who is authorized by the principal to act on the principal's behalf and bind the principal as if the latter were there himself."  Motorsport Eng'g, Inc. v. Maserati SPA, 316 F.3d 26, 29–30 (1st Cir. 2002).  "[I]n certain ambiguous situations, ties and interconnections of various kinds may be relevant to show agency."  Id. at 30.  "It is not, however, reasonable to infer an agency relationship from the mere fact of affiliation.  Affiliation, without more, does not make a person an agent of a party to a lawsuit for purposes of Fed. R. Evid. 801(d)(2)(D)."  DiMare v. RealtyTrac, Inc., 714 F. Supp. 2d 199, 207 (D. Mass. 2010) (citation omitted).

Bass and OA have never contracted or advertised with MSO.  See [ECF No. 1-1, Ex. D (Bass Aff.) ¶¶ 1-2; ECF No. 13-1 (Zahka Aff.) ¶ 7].  The Court therefore credits the Out-of-State Defendants' Affidavits, does not credit Dr. Beck's, and finds that, at least on this record, there is no evidence that Dr. Bass or OA contracted with MSO.  See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Plaintiffs' remaining allegation tying Dr. Bass and/or OA to MSO is that that Dr. Bass's contact information populates when "Robert Bass" is searched on the "Find a Doctor" page of MSO's website.  See [Verified Compl. ¶ 64].  Dr. Zahka attests that:

> The "Find a Doctor" function of the MSO website is connected to a national database and is not limited to MSO members or doctors practicing in Massachusetts. MSO does not advertise for any doctor, and a doctor's inclusion in the search results on the "Find a Doctor" page is not advertising.

[ECF No. 13-1 (Zahka Aff.) ¶ 7].  This is, at most, an "affiliation," which is insufficient to establish agency.  See DiMare, F. Supp. 2d at 207 (finding that "statements on the company's website that it has a 'network' of 'affiliated' real estate professionals" were not sufficient to establish an agency relationship between the company and the real estate professionals).

Second, the Out-of-State Defendants argue that Plaintiffs' other allegations related to MSO, namely (1) that MSO was in a position to benefit financially from Dr. Beck's removal from VSP, and did in fact financially benefit, [Verified Compl. ¶ 70; ECF No. 7 at 10–11]; and (2) that MSO "teamed up" or "conspired" with the other Defendants to terminate Beck's relationship with VSP, [Verified Compl. ¶¶ 69, 71–72]—similarly fail to establish MSO's involvement.  [ECF No. 13 at 3–5].  The Court agrees, and finds the same as to Plaintiffs' allegations related to Dr. Metsch, raised in their reply.

Even assuming that MSO or Dr. Metsch could have or did gain from Dr. Beck's termination, this alone does not allege any conduct on the part of MSO, nor can the Court reasonably infer from this allegation that MSO actually engaged in any conduct sufficient to link them to the allegations at issue.  Likewise, Plaintiffs' allegations that MSO conspired with or teamed up with other Defendants or that Dr. Metsch communicated with VSP lack any grounding in credible evidence.  Dr. Zahka attests that MSO "had no involvement" in the termination or the Peer Review Panel and "has no knowledge of VSP's termination of Dr. Beck's provider membership."  [ECF No. 13-1 (Zahka Aff.) ¶¶ 4 –5].  Plaintiffs' only responsive evidence on this point are the Verified Complaint and Dr. Beck's Affidavits, which again, the Court does not credit because Dr. Beck lacks any personal knowledge related to MSO's or Dr. Metsch's conduct.

The Court finds that the Out-of-State Defendants have established by clear and convincing evidence that MSO was not involved in the conduct at issue.  Plaintiffs have thus not raised any claim for which there is a possibility of recovery from MSO, and MSO has been fraudulently joined.[8]  See Surabian, 245 F. Supp. 3d at 299.  The Court therefore DISMISSES MSO as a party to this action.  See Carey v. Bd. of Governors of Kernwood Country Club, 337 F. Supp. 2d 339, 343 (D. Mass. 2004) (dismissing in-state defendants and denying plaintiffs' motion to remand because "the individual defendants [were] non-diverse defendants without a real and viable connection to the controversy.") (citing Mills, 178 F. Supp. 2d at 4).

---

[8] The Court notes that the fact that MSO filed an answer rather than a motion to dismiss in state court does not alter the Court's conclusion.  In fact, MSO's answer, which as the Out-of-State Defendants point out, stated that MSO "'lacked knowledge' in responding to nearly every single factual allegation" and listed as its first affirmative defense "the Complaint fails to state a claim upon which relief may be granted," [ECF No. 13 at 4 (quoting ECF No. 6-2 at 12–27)], provides further support for fraudulent joinder.

Because Defendants have shown, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, and, by clear and convincing evidence, that MSO was fraudulently joined, the Court finds that it has diversity jurisdiction over at least one claim, pursuant to 28 U.S.C. § 1332, and supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, as to all other claims.  Plaintiffs' Motion to Remand is therefore <u>DENIED</u>.

### III.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### A.    Additional Relevant Facts

##### 1.    <u>Contacts Related to the Peer Review Panel</u>

"At all relevant times, the Peer Review Panel met remotely," Dr. Bass and Dr. Bronstein did their work in connection with the Panel from their home states of Virginia and California, respectively, they did not travel to Massachusetts in connection with their work for the Panel, and they did not "meet with, correspond with, or speak with Dr. Beck outside of the [Hearing]." [ECF No. 5-1 (Bronstein Aff.) ¶ 6; ECF No. 5-2 (Bass Aff.) ¶ 6].  Plaintiffs do not indicate where the Peer Review Panel Hearing took place, but the Out-of-State Defendants allege that Dr. Bass and Dr. Bronstein both attended remotely.  [<u>Id.</u>].

The Peer Review Panel Letter was sent to VSP in California. [Verified Compl. ¶¶ 41, 126; ECF No. 23-2 (Beck Aff.) ¶ 58; ECF No. 5-1 (Bronstein Aff.) ¶ 7; ECF No. 5-2 (Bass. Aff.) ¶ 7].  Plaintiffs also claim that the Out-of-State Defendants sent the Peer Review Panel Letter to "multiple Massachusetts agencies, hospitals, insurers, and residents."  [ECF No. 24 at 15 (citing ECF No. 23-2 (Beck Aff.) ¶ 59)].

##### 2.    <u>Out-of-State Defendants' Other Alleged Contacts with Massachusetts</u>

In addition to Dr. Bass and OA's alleged relationship with MSO, discussed *supra*, Plaintiffs also assert that Dr. Bass and OA "knew, or should have known, that . . . eyeglasses and

contact lens sales would be distributed and sold in Massachusetts through their connection and advertising with [MSO]."  [ECF No. 23-2 (Beck Aff.) ¶ 61].  Plaintiffs further allege that Dr. Bronstein's website states that he completed a fellowship "at the Massachusetts Eye and Eye Infirmary, Harvard Medical School Retina Service and Retina Associates," [id. ¶ 12], and Bronstein, Bronstein P.C., and OC "use[] the Massachusetts Eye and Ear Infirmary name to draw in Massachusetts residents who live part-time in California."  [ECF No. 23 at 2].  Further, Dr. Beck believes that he "share[s] [with Dr. Bronstein] many patients who live part of the year in Southern California and necessitate routine, urgent, or emergent retina care in Southern California and its retina doctors."  [ECF No. 23-2 (Beck Aff.) ¶ 14].

Plaintiffs also allege that the Out-of-State Defendants "contract with VSP to provide numerous doctor related services to VSP, including care for residents from Massachusetts and consultation services related to credentialing oversight activities over medical providers through VSP in Massachusetts."  [ECF No. 23-2 (Beck Aff.) ¶ 35].

### B.    Legal Standard

"To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  The Due Process Clause of the Fourteenth Amendment allows a state court to exercise personal jurisdiction over a nonresident only where the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).  A court may not assert jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled

into court there." Volkswagen v. Woodson, 444 U.S. 286, 297 (1980). The Massachusetts long-arm statute also limits when courts may exercise personal jurisdiction over nonresidents. See Mass. Gen. Laws ch. 223A § 3.

Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over Defendants. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (citations omitted). Under this standard, the Court takes as true whatever properly documented facts a plaintiff proffers, construes those facts in the light most favorable to the plaintiff, and considers facts put forward by the defendant only to the extent that they are uncontradicted. See Phillips, 530 F.3d at 26; Platten v. HG Bermuda Exempted Ltd, 437 F.3d 118, 134 (1st Cir. 2006).

> The prima facie approach does not require that we "credit conclusory allegations or draw farfetched inferences." Instead, "[t]he prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record." "Although the burden of proof is light, [the plaintiff] may not rely on the mere allegations of its complaint, but must point to specific facts in the record that support those allegations." [Plaintiffs] "must go beyond the pleadings and make affirmative proof."

Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Ticketmaster-N.Y., 26 F.3d at 203; then quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); then quoting Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002); and then quoting Boit, 967 F.2d at 675).

### C.  Discussion

#### 1.  Long-Arm Statute

Because "'the Massachusetts long-arm statute imposes specific constraints on the

exercise of personal jurisdiction that are not coextensive with the parameters of due process,' . . . Massachusetts courts . . . begin with 'a determination under the long-arm statute' before 'considering the constitutional question.'" Mojtabai v. Mojtabai, 4 F.4th 77, 85 (1st Cir. 2021) (quoting SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017)) (internal alterations omitted).

The Massachusetts long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from" eight categories of conduct, including:

> (a) transacting any business in this commonwealth; (b) contracting to provide services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; [and] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Mass. Gen. Laws ch. 223A, § 3(a)–(d).  In their opposition, Plaintiffs assert that the Court has jurisdiction over the Out-of-State Defendants under all four of these provisions.  [ECF No. 24 at 10–13].

As noted above, another session of this Court addressed personal jurisdiction in the context of Dr. Beck's similar claims against Dr. Reynolds.  See Beck v. Vision Serv. Plan Ins. Co., 600 F. Supp. 3d at 149–55.  The Court there found that Dr. Reynolds resided and practiced in Hawaii, conducted his review of Dr. Beck's termination without communicating with Dr. Beck or traveling to Massachusetts, and sent the results of his review in an April 8, 2020 letter to VSP in California.  Id. at 149–50.  The court therefore determined that Dr. Beck had failed to present facts to support jurisdiction under either § 3(a) or § 3(b), quoted above, or § 3(f) ("contracting to insure any person, property or risk located within this commonwealth at the time of contracting").  Id. at 152–53.  On the other hand, the court found Dr. Beck's fourth asserted

basis for jurisdiction, "causing tortious injury by an act or omission in the commonwealth" under

§ 3(c), "present[ed] a more difficult question," because Dr. Beck had alleged that

> Reynolds "knew, or reasonably should have known" that Beck was a Massachusetts
> resident when Reynolds authored the April 8 Letter, which contained allegedly
> false statements about Beck's conduct and fitness as a provider, and that Reynolds
> certainly knew the statements would cause injury in Massachusetts because it
> would lead to plaintiff's termination from the provider network.

Beck v. Vision Serv. Plan Ins. Co., 600 F. Supp. 3d at 153.  The court found that there was

"conflicting case law on the issue" of whether "an allegedly tortious act committed outside the

borders of Massachusetts, purposefully directed at the state and intended to cause injury there,

could constitute an in-forum act within the meaning of section 3(c)" in this context.  Id. at 153

(quoting Ticketmaster–N.Y., 26 F.3d at 205).  The court thus followed the path taken by the First

Circuit in Ticketmaster–N.Y., Inc. v. Alioto, and "assume[d] arguendo that Beck has alleged a

prima facie case authorizing personal jurisdiction under" this provision of the Long Arm statute

and proceeded "to the constitutional analysis."  Id. at 153–54.

> Plaintiffs similarly allege here:

> Defendants knew through representations made by Beck and others, both before
> and at the Hearing, or reasonably should have known, that Beck, and other
> Plaintiffs, were Massachusetts residents when . . . Defendants authored their
> termination letter and broadcast it to multiple agencies, hospitals, and other insurers
> in Massachusetts, which contained false statements about Plaintiff's conduct and
> fitness as a provider, and that . . . Defendants certainly knew the statements would
> cause injury in Massachusetts because it would lead to plaintiff's termination from
> the provider network as well as other damages.

[ECF No. 24 at 8 (citing ECF No. 23-2 ¶ 52)].  Thus, the Court will also assume jurisdiction

exists under the Long Arm Statute and proceed to evaluate due process.

### 2.    Constitutional Analysis

Courts may exercise two types of personal jurisdiction under the Fourteenth Amendment:

general or specific.  See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St.

Corp., 960 F.3d 1080, 1088–89 (1st Cir. 1992) (distinguishing the two types of personal jurisdiction).  Under "general [personal] jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state." Harlow v. Child.'s Hosp., 432 F.3d 50, 57 (1st Cir. 2005).  With "specific [personal] jurisdiction, the plaintiff's claim must be related to the defendant's contacts." Id.  A finding of either specific or general personal jurisdiction is sufficient for a case to proceed.  See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 959 F. Supp. 36 (D. Mass. 1997), aff'd, 142 F.3d 26, 34 (1st Cir. 1998).  Plaintiffs assert that the Court may exercise both general and specific jurisdiction over all the Out-of-State Defendants.  [ECF No. 24 at 13– 18].

> i.   General Jurisdiction

"[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render [a person] essentially at home in the forum State.'" Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile," Goodyear, 564 U.S. at 924, and, for a corporate defendant, those paradigmatic fora are its "place of incorporation and principal place of business," Daimler, 571 U.S. at 137.  There may also be rare "exceptional case[s]," where a defendant corporation's general business operations in a state in which it is neither incorporated nor headquartered are "so substantial and of such a nature as to render the corporation at home in that State." Daimler, 571 U.S. at 139 n.19.

Massachusetts is not a paradigmatic forum for general jurisdiction for any of the Out-of-State Defendants.  See Goodyear, 565 U.S. at 924; Daimler, 571 U.S. at 137.  Plaintiffs,

however, assert that the Out-of-State Defendants "conducted and solicited business systematically and continuously in Massachusetts," and as such, are subject to general jurisdiction in Massachusetts.  [ECF No. 24 at 12–13].  Even assuming that such contacts could establish general jurisdiction over individual defendants, the Court finds that Plaintiffs have failed to allege contacts sufficient to make the requisite showing.  The only evidence Plaintiffs proffer to support their allegations that the Out-of-State Defendants, for example, "provide numerous doctor related services to VSP, including care for residents from Massachusetts and consultation services related to credentialing oversight activities over medical providers through VSP in Massachusetts," [ECF No. 23-2 (Beck Aff.) ¶ 35], are their Verified Complaint and another affidavit from Dr. Beck.  The Court again finds that Dr. Beck does not have personal knowledge on these topics and therefore does not credit this evidence.  Cf. Milford Power Ltd. P'ship by Milford Power Assocs. Inc., 918 F. Supp. at 478 ("this Court may consider affidavits submitted in support of [a] motion to dismiss [for lack of personal jurisdiction] if they are based on the personal knowledge of a competent affiant"); JMTR Enters., L.L.C. v. Duchin, 42 F. Supp. 2d 87, 95 (D. Mass. 1999) (in the context of personal jurisdiction, declining to credit allegation in verified complaint that an individual was the defendant's agent, because the alleged agent's "authority to conduct business on behalf of [the defendant] is not a matter within the personal knowledge of the" plaintiff).  Further, merely alleging generally that all Out-of-State Defendants provided general services to patients and served on various boards and committees and received revenue therefrom lacks the specificity needed to support jurisdiction.  See Platten, 437 F.3d at 134.

Plaintiffs' allegation that Dr. Bronstein treats, in California, "many" of Dr. Beck's Massachusetts patients who live in California part of the year, [ECF No. 23-2 (Beck Aff.) ¶ 14],

also fails to establish any contact with Massachusetts, because even if Dr. Beck has personal knowledge of this alleged fact, such conduct did not occur in Massachusetts.  See Daimler, 571 U.S. at 139 n.19.  Finally, Plaintiffs' allegation that Dr. Bronstein uses a fellowship at the Massachusetts Eye and Ear Infirmary to "draw in Massachusetts residents who live part-time in California," [ECF No. 23 at 2; ECF No. 24 at 1–2], is too tenuous a connection to serve as a basis for jurisdiction.  As such, the Court finds that it may not exercise general jurisdiction over any of the Out-of-State Defendants.

ii.      Specific Jurisdiction

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities."  Swiss Am. Bank, Ltd., 274 F.3d at 618 (quoting Mass. Sch. of Law, 142 F.3d at 34).  For the Court to have specific jurisdiction over an out-of-state defendant consistent with the Due Process Clause, plaintiffs must demonstrate each of the following three conditions is satisfied for that defendant:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must . . . be reasonable.

Daynard v. Ness, 290 F.3d 42, 60 (1st Cir. 2002) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995)).

Assuming Dr. Bass and Dr. Bronstein's Peer Review Panel-related activities are related to Plaintiffs' causes of action,[9] for the Out-of-State Defendants to have purposefully availed

---

[9] "The relatedness standard is a 'flexible, relaxed standard,' . . . which focuses on the 'nexus between the defendant's contacts and the plaintiff's cause of action.'" Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (citation omitted).  The requirement "falls between proximate and 'but for' causation, with foreseeability shaping most relatedness determinations."  Micheli v.

themselves of the privilege of conducting activities in Massachusetts, their contacts with

Massachusetts must be voluntary, so "that jurisdiction is not premised on 'random, isolated, or

fortuitous' contacts with the forum state," Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 245 (D.

Mass. 2017) (internal citation omitted), and foreseeable, such that they should "reasonably

anticipate being haled into court" in Massachusetts, Phillips, 530 F.3d at 28 (quoting

Volkswagen, 444 U.S. at 297).

In Beck v. Vision Serv. Plan Insurance Co., the court found that this prong of the analysis

was not satisfied for Dr. Reynolds because "although the effects of the alleged defamation were

felt in the forum state [by Dr. Beck], Reynolds sent his letter to VSP in California as part of a

confidential peer review process, and there are no allegations that he ever contacted plaintiff or

anyone else in Massachusetts or that he engaged in any activities in Massachusetts." 600 F.

Supp. 3d at 154 (citation omitted).  Many of the same considerations apply here—while Dr. Beck

may have felt the impact of the alleged false statements in the Peer Review Letter in

Massachusetts, that Letter, like Dr. Reynold's, was sent to California.  Although Plaintiffs assert

that the Out-of-State Defendants also sent it to "multiple Massachusetts agencies, hospitals,

insurers, and residents," [ECF No. 24 at 15 (citing ECF No. 23-2 (Beck Aff.) ¶ 59)], the Court

declines to credit this allegation, as it does not identify which Defendant(s) sent the Letter or to

whom.  This level of generality also suggests that Dr. Beck does not in fact have personal

knowledge of this alleged fact.  See Milford Power Ltd. P'ship by Milford Power Assocs. Inc.,

918 F. Supp. at 478.  Further, Dr. Bass and Dr. Bronstein engaged in all work related to the Panel

---

Techtronic Indus., No. 11-cv-10503, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) (citing
Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715–16 (1st Cir. 1996)).

from their home states of Virginia and California, did not travel to Massachusetts, and did not communicate with Dr. Beck outside of the Hearing.

As to the hearing itself, although Dr. Bass and Dr. Bronstein attended the Hearing remotely and Plaintiffs do not indicate where Dr. Beck was for the Hearing, it seems reasonable to infer that Dr. Beck attended the Hearing in Massachusetts.  "Massachusetts courts have long held that remote communications occur in the forum."  LaForest v. Ameriquest Mortg. Co., 383 F. Supp. 2d 278, 283 n.1 (D. Mass. 2005) (citing Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 934 (1st Cir. 1985); Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)). Here, viewing the facts in the light most favorable to the Plaintiffs, and thus finding that the hearing occurred in Massachusetts, the Court nonetheless finds that this single contact is insufficient to show that the Out-of-State Defendants purposely availed themselves of the privileges of conducting themselves in Massachusetts.  This is particularly so where the Out-of-State Defendants conducted the Peer Review Panel at VSP's request; Plaintiffs allege that the Out-of-State Defendants are employed by and act as "high-level agents" for VSP; and Plaintiffs have not credibly supported their allegations that the Out-of-State Defendants benefited from their involvement in the Peer Review Panel.  See, e.g., Pettengill v. Curtis, 584 F. Supp. 2d 348, 359–60 (D. Mass. 2008) (declining to find employees had "purposefully availed themselves of the laws and protections of Massachusetts" where "there [was] no evidence that the Individual Defendants acted outside the scope of their employment or secured any individual benefit due to their activities").

Turning to last prong of the analysis, the First Circuit has identified the following "Gestalt factors" to guide the reasonableness inquiry:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and

effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Pritzker v. Yari, 42 F.3d 53, 63–64 (1st Cir. 1994) (quoting United Elec., Radio & Mach.

Workers of Am., 960 F.2d at 1088).  As to Dr. Reynolds, the court found "[e]ven if Reynolds

could be said to have purposefully availed himself of Massachusetts, . . . Beck has nonetheless

failed to establish that it would be reasonable to hale Reynolds into court in Massachusetts"

because

> Reynolds has no actual contacts with Massachusetts.  He is a citizen of Hawaii, not Massachusetts, and his only related contact in this case was with VSP in California. The burden of appearing in Massachusetts, furthermore, would be substantial for a resident of Hawaii, and plaintiff's intent in obtaining effective relief in Massachusetts is lessened by the fact that the dispute will likely be resolved by the arbitration.

Beck v. Vision Serv. Plan Ins. Co., 600 F. Supp. 3d at 154–55.  Similarly, here the only contact

any of the Out-of-State Defendants had with Massachusetts related to the conduct at issue was

the Hearing, which Dr. Bass and Dr. Bronstein attended at the behest of VSP.  It would be

burdensome for the Out-of-State Defendants to travel to Massachusetts, particularly those that

would come from California, and Plaintiffs have not indicated why this case could not be

litigated elsewhere, say in California and/or Virginia.  The Court thus finds that it would be

unreasonable to exercise personal jurisdiction over the Out-of-State Defendants, and Plaintiffs

have failed to establish that exercising personal jurisdiction over the Out-of-State Defendants

would comport with due process.

### D.        Jurisdictional Discovery

Plaintiffs alternatively request that the Court allow for jurisdictional discovery.  [ECF No.

23 at 3–4; ECF No. 24 at 18–19].  The First Circuit has "long held that 'a diligent plaintiff who

sues an out-of-state corporation and who makes out a colorable case for the existence of *in*

*personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery.'"  Swiss

Am. Bank, 274 F.3d at 625 (quoting Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962,

964 (1st Cir. 1997)).  "However, that entitlement is not absolute. . . . [E]ven when the plaintiff

has been diligent and has made a colorable claim for personal jurisdiction, the district court still

has broad discretion to decide whether discovery is required."  Id. at 625–26 (internal citations

and quotation marks omitted).

       In support of their request for discovery, Plaintiffs assert that that they seek "Defendants'

internal financial and other information showing the scope and extent of their contacts and

revenues generated in the Commonwealth of Massachusetts."  [ECF No. 24 at 18].  They also

include proposed document requests seeking, for example, "any and all communication,

documents, contracts, or agreements, which resulted in money transfer to Bronstein for services

rendered with respect to any Massachusetts individual or corporation over the last ten years,"

[ECF No. 23-1 at 5],[10] and proposed topics for interrogatories that are similarly broad,[11] or even

totally irrelevant to the current dispute.[12]  The Court finds that such broad, pro forma "discovery

---

[10] See also, e.g., [ECF No. 23-1 at 4 ("federal and state tax returns, financial data including general ledgers, Quickbook files, and profit-and-loss statements of Bronstein for the last ten years with respect to patients seen and billed from Massachusetts, products sold by Bronstein to Massachusetts residents, services rendered by Bronstein to all Massachusetts agencies, hospitals, corporations, and insurers, including VSP"); id. at 8–31 (proposing the same or similar requests for the other Out-of-State Defendants)].

[11] [ECF No. 23-1 at 36 ("Describe any and all interactions over the last ten years you have had with any patient domiciled in Massachusetts, any corporation incorporated in Massachusetts or doing business in Massachusetts, any service rendered to a person in Massachusetts, and any good sold to a person in Massachusetts.")].

[12] [ECF No. 23-1 at 40 ("Please identify each and every primary and excess insurance policies which provide coverage for the alleged incident, stating in your answer for each such policy: the name of the insurance carrier, the policy period, the policy limits and whether such policy provides primary or excess insurance coverage.")].

would amount to no more than a fishing expedition."  Venmill Indus., Inc. v. ELM, Inc., 100 F.

Supp. 3d 59, 74 (D. Mass. 2015) (quoting Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th

Cir.1995) ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and

based on bare allegations in the face of specific denials made by defendants, the Court need not

permit even limited discovery.") (internal alterations omitted).  "In addition to making a

colorable claim, it is also incumbent upon the plaintiff to 'present facts to the court which show

why jurisdiction would be found if discovery were permitted.'"  Rain ex rel. Crandall v. Conn.

Gen. Corp., No. 17-cv-30115, 2019 WL 7604856, at *7 (D. Mass. Aug. 6, 2019) (quoting

Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007)).  Plaintiffs have

failed to do so here.  Plaintiffs' request for jurisdictional discovery is therefore DENIED.

### E.     Transfer Pursuant to 28 U.S.C. § 1631

A district court may transfer a case to another district to cure a lack of jurisdiction:

> Whenever a civil action is filed in a court . . . and that court finds that there is a
> want of jurisdiction, the court shall, if it is in the interest of justice, transfer such
> action or appeal to any other such court . . . in which the action or appeal could have
> been brought at the time it was filed or noticed, and the action or appeal shall
> proceed as if it had been filed in or noticed for the court to which it is transferred
> on the date upon which it was actually filed in or noticed for the court from which
> it is transferred.

28 U.S.C. § 1631. "The First Circuit has interpreted this provision to establish a presumption in

favor of transfer—rather than dismissal—when the forum court lacks personal jurisdiction over

one of the defendants."  TargetSmart Holdings, LLC v. GHP Advisors, LLC, 366 F. Supp. 3d

195, 214 (D. Mass. 2019) (citing Fed. Home Loan Bank of Boston v. Moody's Corp., 821 F.3d

102, 119 (1st Cir. 2016)); see also Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003)

("Congress's use of the phrase 'shall . . . transfer' in section 1631 persuasively indicates that

transfer, rather than dismissal, is the option of choice.").

To determine whether transfer of this case is appropriate and, if so, where it should be transferred to, the Court must consider the issue of venue.  "[T]he term 'venue' refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts."  28 U.S.C. § 1390(a).  The general venue statute provides that "[a] civil action may be brought in":

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Because the Court has found that it does not have personal jurisdiction over the Out-of-State Defendants, venue is improper in this judicial district.  See Moore v. S.N.H. Med. Ctr., No. 08-cv-11751, 2009 WL 5214879, at *10 (D. Mass. Aug. 18, 2009) (finding that, because defendant was not subject to personal jurisdiction in Massachusetts, defendant did not reside in Massachusetts and venue was inappropriate).

"[T]he burden of establishing venue is on the plaintiff."  Gill v. Nakamura, No. 14-cv-13621, 2015 WL 5074475, at *2 (D. Mass. July 24, 2015) (citing Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979)).  Although Plaintiffs have asked that the Court transfer the case to a District Court in Virginia, it is not clear that either District in Virginia would be an appropriate venue for all of the Out-of-State Defendants—Dr. Bass is a resident of Virginia and OA is a Virginia corporation, but Dr. Bronstein, Bronstein P.C., and OC do not appear to have any connection to Virginia.  Thus, instead of transferring the case, the Court will dismiss without prejudice to allow Plaintiffs to file elsewhere.

## IV.       CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Remand, [ECF No. 6], is <u>DENIED</u>,

MSO is <u>DISMISSED</u> as a defendant, and the Out-of-State Defendants' Motion to Dismiss, [ECF

No. 4], is <u>GRANTED</u>.

**SO ORDERED.**

September 8, 2023                                        /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE